1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:    mdb@kuzykclassactions.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIVA DE GUZMAN on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GREAT HEALTHWORKS, INC.**<br><br>**Defendant.** | **CASE NO.:**<br><br><u>**CLASS ACTION**</u><br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Diva De Guzman ("Plaintiff"), individually and on behalf of herself and all others

2    similarly situated, brings this class action against Defendant Great Healthworks, Inc. ("GHW" or

3    "Defendant") and on the basis of personal knowledge, information and belief, and the investigation

4    of counsel, alleges as follows:

5    **<u>INTRODUCTION</u>**

6    1.    This is a proposed class action on behalf of a nationwide class and a California sub-

7    class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices

8    associated with the advertising, labeling and sale of its dietary supplement.

9    2.    Defendant GHW manufactures, markets, advertises, and sells a Product called

10   OmegaXL ("Supplement" or Product"), which claims to be a 300 mg proprietary blend consisting of

11   Green Lipped Mussel ("GLM"), Extra Virgin Olive Oil ("EVO") and d-alpha Tocopherol. The

12   principal display panel identifies the Product as "A Powerful Essential Fatty Acid Combination from

13   the Pristine Waters of New Zealand" and states that it contains "30 Free Fatty Acids." The

14   Supplement Facts section states the Product is a proprietary blend consisting principally of GLM.

 

---

1

3.     There are several infirmities with the Product's label that render it false, misleading and in violation of the laws alleged herein.

4.     First, the Product consists principally of olive oil. The Omega content of the Product is comparatively small. Despite the relatively small amount of Omega in the Product, however, GHW chose to name it "OmegaXL" which does not conform to the Food Drug & Cosmetic Act's ("FDCA") requirements pertaining to standards of identity, 21 C.F.R. §101.3(d) and (g), and more significantly, does not provide consumers with an accurate understanding of the true nature of the Product.

5.     Second, reconfirming the misleading representation on the front, the Product's Supplement Facts section on the back of the label describes it as a proprietary blend ("PCSO-524") consisting of three ingredients: GLM extract, Extra Virgin Olive Oil and d-alpha Tocopherol ("Vitamin E"). However, Plaintiff's testing reveals that of 300 mg serving, only 100 mg consists of GLM lipid extract with the majority (i.e., approximately 200 mg) consisting of olive oil with vitamin E making up a fraction of a milligram. Therefore, olive oil, and  not GLM extract, is the principal component of the proprietary blend and should be listed first to properly convey the strength of the blend's sub ingredients and to avoid misleading consumers. As 21 C.F.R. § 101.36(d)(2) unequivocally states, "[w]hen source ingredients are listed within the nutrition label, and two or more are used to provide a single dietary ingredient, all of the sources shall be listed within the parentheses **in descending order by weight**" (emphasis added).

6.     Green Lipped Mussel, and its unique version of Omega-3 is what provides the  anti-inflammatory health benefits sought by consumers and it's the primary reason consumers purchase OmegaXL. The potency of the GLM (and the Omega-3s contained therein) therefore is material to a reasonable consumer who has numerous choices among GLM supplements, many of which are provided in higher dosages and at cheaper prices.

7.     Third, a material portion of the Product's fatty acids are also derived from olive oil rendering the representation that the Product's fatty acid combination emanates from the "Pristine Waters of New Zealand" further misleading.

8. Throughout the applicable class periods, Defendant falsely represented the nature of its Product, and as a result of this false and misleading labeling, was able to sell it to tens of thousands of unsuspecting consumers throughout California and the United States, and to profit thereby.

9. Plaintiff alleges Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* California Civil Code § 1750, *et seq.,* and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

**JURISDICTION AND VENUE**

10. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as: Plaintiff Diva De Guzman is a resident of San Jose, California; Defendant GHW is incorporated in Nevada and maintains its principal place of business in Fort Lauderdale, Florida. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

**PARTIES**

12. Plaintiff Diva De Guzman is a resident of San Jose, California.

13. Ms. De Guzman purchased OmegaXL within the applicable class periods directly from GHW.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

14.     Ms. De Guzman believed the representations on the Product's label – particularly that she was consuming a supplement, the principal constituent of which was Green Lipped Muscle and the Omegas derived therefrom.

15.     Ms. De Guzman believed that Defendant lawfully marketed and sold the Product.

16.     Ms. De Guzman relied on Defendant's labeling and was misled thereby.

17.     Ms. De Guzman would not have purchased the Product, or would have purchased the Product on different terms had she known the truth.

18.     Ms. De Guzman was injured in fact and lost money as a result of Defendant's improper conduct.

19.     If Ms. De Guzman has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would consider purchasing the Product in the future.

20.     Defendant Great Heathworks, Inc. manufactures, markets and sells a variety of dietary supplements, including OmegaXL, the subject of this litigation. GHW is a Nevada corporation headquartered in Fort Lauderdale Florida.

## GENERAL ALLEGATIONS

21.     GHW develops, markets, sells and distributes a line of health and wellness products, the cornerstone of which is OmegaXL, a green lipped mussel extract with unique properties that claims to reduce symptoms of arthritis and other inflammatory diseases.

22.     *Perna canaliculus*, the green-lipped mussel, is endemic to New Zealand. When taken orally in whole powder or oil extract formats, GLM has been found to be beneficial for pain relief, reducing inflammation and ameliorating other debilitating symptoms associated with inflammatory diseases such as rheumatoid arthritis and osteoarthritis with minimal  adverse side effects.[1]  The

---

[1] Abshirini M, Coad J, Wolber FM, von Hurst P, Miller MR, Tian HS, Kruger MC. *Green-lipped (greenshell™) mussel (Perna canaliculus) extract supplementation in treatment of osteoarthritis: a systematic review. Inflammopharmacology*. 2021 Aug;29(4):925-938. doi: 10.1007/s10787-021-00801-2. Epub 2021 Mar 18. PMID: 33738701; PMCID: PMC8298224. Available at NIH, National Library of Medicine. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8298224/

underlying mechanisms producing these effects are in the anti-inflammatory activity of bioactive lipids in mussels including eicosapentaenoic acid (EPA) and docosahexaenoic acid (DHA) (i.e. the Omega-3s found in GLM).

23.    Although limited in scope and findings, early studies suggest that GLM extracts are beneficial as adjuvants to conventional therapies for arthritic conditions.

24.    As supplement manufacturers realized the value of the unique qualities of GLM, the market for GLM Omega-3 grew significantly. By 2020 the global mussel oil and powder market size was valued at USD 159.70 million and is expected to expand at a compound annual growth rate of 5.3% over the next several years.[2]

25.    Indeed, GHW, a leader in GLM sales, so aggressively promoted their products as over the counter solutions to "inflammation relief" that they received a warning letter from the U.S. Food and Drug Administration ("FDA") admonishing them for making unsupported disease claims such as:  "PCSO-524, found in OmegaXL, has demonstrated to be an effective complementary or alternative course of action for providing relief from joint pain, as well as other inflammatory conditions . . .;" "OmegaXL is shown in clinical research to help relieve joint discomfort due to inflammation;" and  "OmegaXL is widely recognized as a leader in natural relief from pain due to inflammation." Such claims led the FDA to conclude that GHW's "products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of the Act [21 U.S.C. § 321(p)]….. [N]ew drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA."[3]

---

[2] *Mussel Oil & Powder Market Size, Share & Trends Analysis Report By Form (Oil, Powder), By Grade (Food, Cosmetic, Pharmaceutical), By Application, By Distribution Channel, By Region, And Segment Forecasts, 2021 – 2028*, Grand View Research, available at https://www.grandviewresearch.com/industry-analysis/mussel-oil-powder-market-report

[3] FDA Warning Letter, Great Healthworks, Inc. MARCS-CMS 611686 — June 23, 2021. Available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/great-healthworks-inc-611686-0623202.

26.    Notwithstanding the warning, GHW continued to aggressively market OmegaXL to consumers across California and the United States.

## A.    THE FEDERAL FOOD DRUG & COSMETIC ACT

27.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of food and beverages to the consuming public. 21 U.S.C § 301.  It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions. The FDCA generally prohibits labeling that is false or misleading. 21 U.S.C. § 343.

28.    The Nutrition Labeling and Education Act of 1990 amended the FDCA by requiring that most foods, including dietary supplements, bear nutrition labeling. Subsequently, the Dietary Supplement Health and Education Act of 1994 ("DSHEA") amended the FDCA to define dietary supplements and implemented specific labeling requirements pertaining to them. As such, dietary supplements must be labeled in accordance with the mandates of the FDCA.

29.    By extensively regulating the labeling of foods, beverages and supplements, the FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling and have specified how prominently and conspicuously those words and statements must appear. These provisions ensure that statements are presented on labels in such a way as to likely be read and understood by the ordinary person. 21 U.S.C. §343(f).

30.    The FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b).[4]  Generally, a food is misbranded if, among other things, its labeling is false or misleading.  21 U.S.C. §343.[5]  In addition to this general mandate, the FDCA contains specific rules which manufacturers must follow to ensure their products are properly labeled and understood by the reasonable consumer.

---

[4] Dietary supplements are considered "food" for all relevant purposes under the federal Food, Drug and Cosmetic Act. 21 U.S.C. § 321(ff).

[5] California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), which adopts the FDCA in its entirety, identically provides that, "[a]ny food is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code, Article 6, §110660.

31.     First, a product must bear a proper statement of identity, one which accurately describes the contents of the supplement. 21 C.F.R. § 101(a). The statement of identity for a dietary supplement is the name that appears on the product's principal display panel. As a general matter, the statement of identity is the name specified by federal law or regulation, or, if no such name is specified, the common or usual name.  If it does not have a common or usual name, then an appropriate descriptive name, that is not misleading, should be used. Brand names are not considered to be statements of identity and should not be unduly prominent compared to the statement of identity. 21 U.S.C. §321(ff)(2)(C), 21 U.S.C. §343(s)(2)(B), 21 C.F.R. §101.1 and 21 C.F.R. §101.3.

32.     OmegaXL is the most prominent feature on the Product's label. It is a brand name, however, and therefore cannot be the Product's statement of identity, especially if it's one that is not accurately descriptive. While the term "dietary supplement" by itself would be an acceptable statement of identity, as it is an appropriately descriptive term, it must be one of the most important features on the principal display panel (i.e., located centrally in bold type and a type size reasonably related to the most prominent printed matter on the PDP.  21 C.F.R. §101.3(d) and (g).

33.     The Product's statement of identity claims to be OmegaXL. Without anything more, it suggests to any reasonable consumer that the majority of the Product consists of Omegas. Moreover, the label also represents that the Omega fatty acids, along with other fatty acids, emanate from the "pristine waters of New Zealand." Individually and holistically, these representations support the notion that the majority of the Product consists of Omegas that are from New Zealand waters. In other words, that the Omegas come from New Zealand Green Lipped Mussels, rich in the unique Omega-3s that have highly sought after anti-inflammatory properties.

34.     In truth, however, the majority of the Product does not consist of Omegas. Two thirds (i.e., the overwhelming majority) of the Product is nothing more than extra virgin olive oil. Critically, not only is the majority of the Product common olive oil, independent third-party testing

has revealed that the critical and highly sought after GLM Omega-3 is less than 15 mg of the total 300 mg weight of the capsule (i.e., less than 5%).[6]

35.    Moreover, given that the majority of the Product is olive oil, a substance very low in Omega-3 but rich in Omega-9, means that a significant amount of the fatty acids by weight will come from olive oil and not GLM, rendering the claim that the fatty acid combination emanates from the "pristine waters of New Zealand," false and misleading both as to the geographic origins of the fatty acids and the suggestion that they come from green lipped mussels.

36.    Second, the Product's contents are described as a proprietary blend ("PCSO-524") consisting of three ingredients: GLM extract, Extra Virgin Olive Oil and d-alpha Tocopherol. Of the 300 mg serving, approximately 100 mg consists of GLM lipid extract and 200 mg consists of EVO, with vitamin E making up a fraction of a milligram.[7] Olive Oil and not GLM extract therefore is the principal component of the proprietary blend and should be listed first to properly convey the relative strength of the blend's sub ingredients. 21 C.F.R. § 101.36(d)(2) which applies to dietary supplements unequivocally states that, "[w]hen source ingredients are listed within the nutrition label, and two or more are used to provide a single dietary ingredient, all of the sources shall be listed within the parentheses in descending order by weight."[8]  This mandate is reaffirmed by 21 C.F.R. §101.36(c) which specifically addresses the labeling of proprietary blends stating that, "[a] proprietary blend of dietary ingredients shall be included in the list of dietary ingredients described

---

[6] Fish Oil, Krill Oil, and Algal Oil Omega-3 Supplements Review & Top Picks, ConsumerLab.com, November 29, 2020, updated September 1, 2022. Available at www.consumerlab.com/reviews/f1sh-oil-supplements-review/omega3/.

[7] Mickleborough et al., *The effects PCSO-524®, a patented marine oil lipid and omega-3 PUFA blend derived from the New Zealand green lipped mussel (Perna canaliculus), on indirect markers of muscle damage and inflammation after muscle damaging exercise in untrained men: a randomized, placebo controlled trial*, Journal of the International Society of Sports Nutrition (2015) 12:10 DOI 10.1186/s12970-015-0073-z.

[8] *See also*, 21 C.F.R. §101.4 (a)(1) Ingredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by §101.100, shall be listed by common or usual name in descending order of predominance by weight….

in paragraph (b)(3)(i) of this section and identified by the term "Proprietary Blend" or other appropriately descriptive term or fanciful name and may be highlighted by bold type…….(2) Dietary ingredients contained in the proprietary blend that are listed under paragraph (b)(3) of this section (i.e., "other dietary ingredients") shall be declared in descending order of predominance by weight, in a column or linear fashion, and indented under the term "Proprietary Blend" or other appropriately descriptive term or fanciful name.[9]

37.     Defendant's purposeful failure to list the sub ingredients by order of weight, obfuscates the true proportion of GLM in the Product, thereby denying consumers any way of determining the amount of GLM in the Product much less being able to compare it with other marketplace participants in an effort to make a reasoned purchasing decision.

**B.    COMPETITOR PRODUCTS**

38.     GHW is fully aware of its labeling obligations under state and federal laws as well as its overarching duty to honestly inform consumers about the Products it is selling.

39.     It is axiomatic that "the marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."[10] The FDCA was promulgated in part to prevent consumer deception by creating a uniform system of labeling on which consumers can rely in comparing similar products and making informed purchasing decisions. It is critical, therefore, that manufacturers label their products consistently as prescribed law.

---

[9] Section (b)(3) relates to dietary ingredients for which RDI's and DRV's have not been established such as GLM and olive oil.

[10] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328; *FTC v. Proctor & Gamble Co.* (1967) 386 U.S. 568, 572 (noting the central role of advertising and sales promotion in generating market share where the competing products are functionally identical).

40.     Green lipped mussel, and its purported health benefits, is the primary reason consumers  purchase OmegaXL. The potency of the GLM therefore is material to a reasonable consumer who has many choices among GLM supplements, many of which provided higher dosages at cheaper costs. *See, e.g*., Figures 1-3 below. While sub-ingredients in a proprietary blend do not need to be accompanied by a numeric weight, at a minimum, they do need to be listed in descending order of weight so a consumer can reasonably understand the Product's contents and the relative strength of its material ingredients so that he/she can make an informed purchasing decision.

Fig.1



**Supplement Facts**

Serving Size 1 Capsule

| Supplement Facts | |
| --- | --- |
| **Amount Per Serving** | **% Daily Value** |
| Freeze-Dried Green Lipped Mussel (Perna canaliculus) 500 mg | * |

*Daily Value not established.

Other ingredients: Gelatin, microcrystalline cellulose (plant fiber), magnesium stearate, silica.

Contains shellfish (green lipped mussel).

**Suggested Use:** As a dietary supplement, take one capsule per day with water.

**WARNING:** For adults only. Do not take this product if you are pregnant or nursing. Consult your healthcare provider before using this or any product if you are taking medication or have a medical condition.

Keep out of reach of children. Do not use if seal is broken. Store in a cool, dry place.

Fig. 2



# Supplement Facts

Serving Size 3 Capsules
Servings Per Container 30

**Amount Per Serving**

| | |
| --- | --- |
| Green Lipped Mussel (Perna Canaliculus) | 500mg* |

*Daily value not established

Additional Ingredients: Vegetarian Capsules.

**Fresh Nutrition** produces the most potent and highest quality Green Lipped Mussels. Our raw materials are carefully sourced and cultivated; contain no fillers, additives, and are manufactured domestically in a cGMP facility. Thank you for choosing *Fresh!*

Do not use this product if you are pregnant or nursing, or if you have a history of gallstones or bile duct obstruction. Consult with your physician prior to taking this product if you are taking medication which may affect blood clotting, or if you plan to have surgery.

Allergy Warning: Contains Fish and Shellfish.

Fig. 3





**Supplement Facts**

Serving Size: 1 Quick Release Capsule
Servings Per Container 120

| Amount Per Serving | % Daily Value |
| --- | --- |
| Green Lipped Mussel | 750 mg * |
| (*Perna canaliculus*) | |
| (from 187.5 mg of 4:1 extract) | |

*Daily Value not established.

Other Ingredients: Rice Powder, Gelatin Capsule, Vegetable Magnesium Stearate, Silica.
Contains shellfish (mussel) ingredients
*Equivalent from 187.5 mg of 4:1 extract.

41.    As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

## ECONOMIC INJURY

42.    Plaintiff sought to buy a Product that was lawfully labeled, marketed and sold.

43.    Plaintiff saw and relied on Defendant's misleading labeling of its Products.

44.    Plaintiff believed that the Product consisted principally of GLM from New Zealand, not olive oil.

45.    In reliance on the claims made by Defendant regarding the qualities of its Product, Plaintiff paid a price premium.

46.    As a result of her reliance on Defendant's misrepresentations, Plaintiff received a Product that lacked the promised ingredients in such amounts which she reasonably believed it contained.

47.    Plaintiff received a Product that was unlawfully marketed and sold.

48.    Plaintiff lost money and thereby suffered injury as she would not have purchased this Product and/or paid as much for it absent the misrepresentations.

49.    Defendant knows that inclusion of GLM in sufficient amounts is material to a consumer's purchasing decision.

50.    Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Product she purchased, and/or in additional amounts attributable to the deception.

51.    By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from their Product.

52.    Plaintiff would be willing to purchase GHW Products again in the future should she be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

      a.  **National**: All persons in the United States who purchased OmegaXL in the United States during the Class Period.

      b.  **California** All persons in California who purchased the OmegaXL in California during the Class Period.

      c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

54.    Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

55.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

56.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

57.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

58.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

      a.  Whether Defendant marketed, packaged, or sold the Class Product to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

      b.  Whether Defendant omitted or misrepresented material facts in connection with the sales of its Product;

      c.   Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.  Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.  Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. (the "UCL");

f.  Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. (the "FAL");

g.  Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. (the "CLRA");

h.  Whether Defendant should be enjoined from continuing the above-described practices;

i.  Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

59.    Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

60.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

61.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it

would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

62.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

63.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty, Cal. Com. Code § 2313)**

64.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

65.     Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased consisted principally of Omegas, a fatty acid combination from the pristine waters of New Zealand (i.e., derived from GLM). The back of the label reconfirmed this misleading representation by falsely indicating that GLM was the most significant ingredient in the Product, when in truth it was nothing more than commonplace olive oil.

66.     The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

67.     Plaintiff and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

68.     Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

69.     Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

70.     Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

71.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

72.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

73.     A business act or practice is "unlawful" if it violates any established state or federal law.

74.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, et seq. and its implementing regulations, including, at least, the following sections:

    a.   21 U.S.C. § 343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 C.F.R. § 102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 C.F.R. § 101(a) pertaining to use of an appropriate statement of identity of a product;

d. 21 C.F.R. § 101.36 requiring dietary ingredients contained in a proprietary blend to be declared in descending order of predominance by weight.

e. 21 U.S.C. §§ 331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

75. California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code § 110765; *See, also* Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 as the food labeling regulations of California. Cal. Health & Safety Code §§ 110100(a), 110665, 110670.

76. As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. 343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

77. Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

78. Defendant's conduct that violates the FDCA also violates the Sherman Law. This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

79.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

80.     Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

### ("Unfair" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

81.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

82.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

83.     A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

84.     Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant had engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

85.     Through its unfair acts and practices, Defendant obtained, and continued to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant had made on their Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FOURTH CAUSE OF ACTION

**("Fraudulent" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**

86.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

87.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

88.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

89.     Defendant's acts and practices of mislabeling their Products in a manner to suggest they principally contained their characterizing/named ingredients.

90.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

91.     Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law

or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FIFTH CAUSE OF ACTION
**(False Advertising in Violation of
California Business & Professions Code §§ l7500, *et seq.*)**

92. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

93. Defendant uses advertising and packaging to sell their Products. Defendant disseminates advertising regarding their Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

94. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

95. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

96. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

97. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of their misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full

restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**SIXTH CAUSE OF ACTION**

**(Violation of the Consumers Legal Remedies Act,
California Civil Code §§ 1750, *et seq.*)**

98.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

99.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

100.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

101.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Products constitute "goods" within the meaning of Civil Code § 1761(a).

102.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

      a.    § 1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

      b.    § 1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

      c.    § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

103.    Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

104.    The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

105.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

106.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

107.    Plaintiff served a CLRA demand pursuant to Civil Code § 1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code § 1770. The demand was received by Defendant and more than thirty days have since expired without Defendant providing the requested relief thereby enabling Plaintiff to properly seek damages as provided under Civil Code § 1780.

108.    Pursuant to Civil Code § 1780(a), Plaintiff and members of the class seek compensatory damages, punitive damages, restitution, disgorgement of profits, and an order enjoining Defendant from deceptively marketing the Products.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTH CAUSE OF ACTION**

**(Restitution Based On Quasi-Contract/Unjust Enrichment)**

109.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

110.    Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

111.    Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

112.    It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

113.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.    Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

1    D.    Other statutory penalties for Causes of Action for which they are available.

2    E.    Punitive Damages for Causes of Action for which they are available.

3    F.    A declaration and Order enjoining Defendant from marketing and labeling its Product

4    deceptively, in violation of laws and regulations as specified in this Complaint.

5    G.    An Order awarding Plaintiff his costs of suit, including reasonable attorneys' fees and

6    pre and post judgment interest.

7    H.    An Order requiring an accounting for, and imposition of, a constructive trust upon all

8    monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct

9    alleged herein.

10    I.    Such other and further relief as may be deemed necessary or appropriate.

11

12

13    **<u>DEMAND FOR JURY TRIAL</u>**

14    Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

15

16

17    DATED: December 5, 2023                    Respectfully submitted,

18

19

20    Michael D. Braun

21    **KUZYK LAW, LLP**
     2121 Avenue of the Stars, Ste. 800

22    Los Angeles, California 90067
     Telephone:    (213) 401-4100

23    Facsimile:    (213) 401-0311
     Email:    mdb@kuzykclassactions.com

24

25

26    *Counsel for Plaintiff*

27

28    <u>P</u>